FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2007 JUL -6 PM 1:01

CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

MATTHEW O. HEADRICH, AMANDA )
HEADRICH, and LEXY HEADRICH )
(Minor), )
)
    Plaintiffs, )
)
v. )
) CASE NO. CV406-27
JOHN STINSON, PACIFIC MOTOR )
TRANSPORT, INC, and )
U.S.F. & G. INSURANCE )
COMPANY, )
)
    Defendants. )
)

## O R D E R

Before the Court is Defendants' Motion to Enforce Settlement. (Doc. 17.) On May 30, 2007, the Court held a hearing on this Motion and allowed the parties to present evidence of the settlement negotiations. After careful consideration, Defendants' Motion is **DENIED**.

### BACKGROUND

This action arises out of a motor vehicle collision that occurred on December 9, 2003 in Savannah, Georgia. Defendant John Stinson was operating a tractor-trailer within the scope of his employment with Defendant Pacific Motor Transport, Inc. when he collided with a vehicle operated by Plaintiff Matthew O. Headrich. Plaintiffs Amanda Headrich and Lexy Headrich were passengers in this vehicle. Plaintiffs allege that they

suffered personal injuries as a result of the collision. While discovery was ongoing, the parties entered settlement negotiations.

At the hearing, Plaintiffs' former counsel John Lloyd and Defendants' counsel Grant Smith recounted the course of these settlement negotiations. Plaintiffs also testified as to their dealings with their former attorney, Mr. Lloyd.

Settlement negotiations began sometime in the spring of 2006. On June 22, 2006, Mr. Lloyd sent Defense counsel a handwritten letter regarding settlement. This chicken-scratched document is written in the style of personal notes, with sentence fragments, abbreviations, and a lack of standardized punctuation. This note makes an offer of $150,000.00, and indicates that the Plaintiffs' daughter, Lexy Headrich, was injured but was unable to be diagnosed because of her young age. This was the only letter Mr. Lloyd sent to Defense counsel regarding the negotiations. All other communications from him were oral.

In the fall of 2006, the attorneys again communicated regarding settlement. Defense counsel sent letters to Mr. Lloyd confirming the substance of these conversations. Mr. Lloyd's communications were only verbal, and he did not send any written letters to document the negotiations. At this time, discovery had closed, and Defense counsel had taken depositions of the

Plaintiffs. Mr. Lloyd had neither conducted depositions nor served Defendants with interrogatories or requests for production of documents.[1]

On December 11, 2006, Mr. Lloyd and Defense counsel reached a verbal agreement over the telephone to settle the case for $45,000.00. At the hearing, Plaintiffs Matthew and Amanda Headrich testified that Mr. Lloyd did not have the authority to settle the case for this amount. They testified that they rejected this proposed settlement, and that Mr. Lloyd was discharged from the representation shortly thereafter. Mrs. Headrich testified that she personally delivered a termination letter to Mr. Lloyd on December 15, 2006, and that she laid it on his desk after he refused to accept it.[2] She stated that Mr. Lloyd told her that he could settle the case without their consent.

## ANALYSIS

The almost universal rule is that "the mere employment of an attorney confers no authority on the attorney to compromise an action and that a compromise by an attorney is not binding on

---

[1] There were several statements made at the hearing that suggested that Mr. Lloyd had not conducted discovery. The record specifically indicates that Mr. Lloyd had not deposed the Defendant vehicle operator. On July 5, 2007, the Court's Deputy Clerk contacted Defense counsel, who confirmed that no discovery was conducted.

[2] Mr. Lloyd continued to file papers with this Court on behalf of the Plaintiffs, and he stated at the hearing that the Plaintiffs had verbally retracted his written termination.

a client, unless the client gives the attorney express authority to compromise or unless the client subsequently ratifies the unauthorized compromise." 5 A.L.R. 5th 56 § 2(a) (1992). In most jurisdictions, "the mere retention of an attorney does not create apparent authority to settle." 7 Am. Jur. 2d Attorneys at Law § 173 (2007). See also Vandiver v. McFarland, 179 Ga. App. 411, 413-14, 346 S.E.2d 854 (1986).

Courts in Georgia, however, have adopted an approach that makes even unauthorized settlements enforceable against the client on the basis of the attorney's apparent authority.

> Under Georgia law an attorney of record has apparent authority to enter into an agreement on behalf of his client and the agreement is enforceable against the client by other settling parties. This authority is determined by the contract between the attorney and the client and by instructions given the attorney by the client, and in the absence of express restrictions the authority may be considered plenary by the court and opposing parties. . . . Therefore, from the perspective of the opposing party, in the absence of knowledge of express restrictions on an attorney's authority, the opposing party may deal with the attorney as if with the client, and the client will be bound by the acts of his attorney within the scope of his apparent authority.

Brumbelow v. N. Propane Gas Co., 251 Ga. 674, 674-675, 308 S.E.2d 544 (1983)(internal citations omitted); see also e.g., Pembroke State Bank v. Warnell, 266 Ga. 819, 821, 471 S.E.2d 187 (1996)(reaffirming Brumbelow).

Where it is undisputed that the client's attorney communicated acceptance of a settlement offer, the client's

alleged lack of consent is irrelevant to the enforceability of any such agreement. Penny Profit Foods, Inc. v. McMullen, 214 Ga. App. 740, 742, 448 S.E.2d 787 (1994). An attorney has apparent authority to settle the case even where the client expressly instructs the attorney in writing that no settlement can be made without his or her consent. Vandiver v. McFarland, 179 Ga. App. 411, 414, 346 S.E.2d 854 (1986). The attorney's acceptance of a settlement binds the client even where the contract for legal services between the attorney and the client expressly provides that the client must consent to any settlement in writing. Hynko v. Hilton, 198 Ga. App. 308, 309, 401 S.E.2d 324 (1991). Georgia courts have repeatedly held that "where an attorney settles a case without the client's consent, the client's remedy is against the attorney who overstepped the bounds of his authority and not against the third party." E.g., Brumbelow, 251 Ga. at 675; Tranakos v. Miller, 220 Ga. App. 829, 833, 470 S.E.2d 440 (1996); Vandiver, 179 Ga. App. at 412.[3]

However, even where there is no dispute that the attorneys reached an agreement, there are exceptions to the Georgia rule that an attorney may bind his client without the client's

---

[3] An attorney who compromises the client's case against the latter's express direction is not entitled to compensation for his services. Rogers v. Pettigrew, 138 Ga. 528, 75 S.E. 631, 631 (1912); Lewis v. Uselton, 202 Ga. App. 875, 876, 416 S.E.2d 94 (1992).

5

consent. First, the attorney's settlement is not binding on the client where limitations on the attorney's authority have been communicated to the opposing party. E.g., Brumbelow, 251 Ga. at 675. Second, a settlement is not binding on a party where there is no valid attorney-client relationship established. Anaya v. Coello, 279 Ga. App. 578, 580-81, 632 S.E.2d 425 (2006). This is because "where there is no attorney-client relationship, an attorney can have no authority, apparent or otherwise, to enter into an agreement enforceable against one who is not a client." Pembroke State Bank v. Warnell, 266 Ga. 819, 822, 471 S.E.2d 187 (1996). Third, the client will not be bound where the attorney's settlement of the case is "fraudulent or collusive." King v. King, 199 Ga. App. 496, 498, 405 S.E.2d 319 (1991).

Finally, in determining whether to enforce a settlement, the court may consider the circumstances surrounding the settlement. A settlement is not binding on the client if the third party "should have known of the lack of authority of the attorney to enter a compromise." Green v. Lanford, 222 Ga. App. 480, 480-481, 474 S.E.2d 681 (1996). A court should consider whether opposing counsel "had reason to be suspicious" or "should have been aware" that the attorney was not acting in furtherance of the client's interests. Dickey v. Harden, 202 Ga. App. 645, 647-648, 414 S.E.2d 924 (1992)(enforcing settlement after finding that the plaintiff had failed to

present sufficient evidence that the defendant had reason to be suspicious of the attorney's authority); see also Hynko v. Hilton, 198 Ga. App. 308, 309, 401 S.E.2d 324 (1991)(enforcing settlement after finding that amount of settlement did not raise suspicion). "If an unauthorized settlement is enforceable where the other attorney lacks such knowledge that it violates express direction of the client, nevertheless nothing in Brumbelow, strictly construed, authorizes compromise where the other party or attorney knew or should have known of the lack of authority to enter a compromise in the case." Lewis v. Uselton, 202 Ga. App. 875, 878, 416 S.E.2d 94 (1992)(internal citations and quotations omitted).

In the instant case, the Plaintiffs, Mr. and Mrs. Headrich, testified that their former attorney Mr. Lloyd did not have authority to settle the case. This limitation was not expressly communicated to Defense counsel, who entered into an oral settlement agreement with Mr. Lloyd.

Under the facts of this case, however, the Court finds that Defense counsel should have known through his experience settling cases for many years that Mr. Lloyd's methods and dealings with counsel were suspicious and lacked thoroughness, and that Mr. Lloyd very well could have been acting without authority from his clients. Mr. Lloyd's pattern of communication was highly unusual, involving one handwritten

letter,[4] only oral communications, and no follow-up written communications. An experienced defense lawyer should have recognized (and in this Court's opinion did recognize) that such unusual practices called into question Mr. Lloyd's apparent authority.

In addition, the Court notes that the injuries sustained by the minor child had not been diagnosed at the time of the verbal agreement, and that Mr. Lloyd had conducted no discovery in the case. This lack of undertaking also should have raised questions in Defense counsel's mind. Although the Court finds no fault in the professionalism of Defense counsel in attempting to reach a settlement with Mr. Lloyd, he should have been on notice that there would be a problem with this settlement. Given the curious nature of the negotiations, as presented at the evidentiary hearing, the Court finds that Mr. Lloyd was acting without apparent authority and that his oral agreement with Defense counsel is not binding on the Plaintiffs.

For these reasons, Defendants' Motion to Enforce Settlement is **DENIED**.

Based on the Court's most recent Scheduling Order, discovery closed in this case on September 25, 2006, and the last day for filing civil motions was October 25, 2006. Any

---

[4] The sole written communication from Mr. Lloyd was made in response to Defense counsel's specific request that Mr. Lloyd make a settlement demand in writing.

motion to reopen discovery or reset deadlines should be filed within **ten (10) days** of the date of this Order. The Court will entertain such a request only if counsel can demonstrate a compelling need for additional discovery and if the request is for a modest period of time.

SO ORDERED this 6th day of July, 2007.

_____
WILLIAM T. MOORE, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA